SAMUEL GIVENS died in 1846, leaving a will in which were contained the following among other clauses: "As to my worldly estate, I dispose of the same as follows: I will that all my personal estate (except such *Page 212 
as is hereinafter disposed of), consisting of horses, etc., be sold to the highest bidder, and the money arising from the said sale, after paying debts, etc., to be equally divided between all of my children, to wit, William, Robert, Margaret, Samuel, John, James, George and Allen, share and share alike, so that the children of any of the deceased children above named may take the same share that their parents would take provided the same were alive." After giving several specific legacies to his wife during life or widowhood, the testator proceeds thus: "I do will and dispose of my lands, containing seven hundred and seven acres, comprehending the following tracts, etc., unto my beloved (308) wife, Lucy Givens, in the following manner, viz., the dwelling house, the pasture field as is called the barn field, the meadow branch field, and the field including the gin house and old orchard, together with the privilege of cutting timber on any part of my whole plantation for the purpose of keeping in repair the said premises to her allotted, to have and to hold unto her own use and benefit during her natural life or widowhood, and at the death or marriage of the said Lucy Givens, then the said land to return into the common stock, and I do further will that my children, William Givens, Robert Givens, Margaret Pardue, and the surviving children of my son Samuel Givens, and Jane, the widow of my son John Givens, and her children, James Givens, George A. Givens and Tabithy Givens, the widow of my son Allen Givens, do settle on and abide on any part of my lands that is unoccupied so as not to interfere with the premises of those now residing on said land; and any of my above-named children who will not settle on my land aforesaid, or those now settled and will not remain on the said land, but will move off and leave the same, then the premises shall revert back and be for the use and benefit of those who may still live on the said premises, and in no case shall any of the aforesaid children or their lawful representative have the right to sell, alien or transfer any of my aforesaid lands, for if any of my heirs will not live and abide on the said land, it shall then remain and be for the sole benefit of those of my heirs who may and will abide, remain on and cultivate the same."
The plaintiffs filed their petition in a court of equity for Union County, in which they insisted that the devise contained in the will of the father of the feme plaintiff as above set forth, was void for uncertainty, and because it tended to create a perpetuity, and that therefore the said land descended to the heirs at law of the testator; and they prayed a partition thereof. To the petition all the heirs at law of the testator, as well as the widows of his deceased sons, were made parties. Some of the defendants filed answers, in which they contended (309) that the devise above set forth was not void for either of the reasons assigned by the plaintiffs; but, on the contrary, was good *Page 213 
and effectual, and gave to such of the persons named in the will as had settled on the lands in question a conditional freehold estate so long as they should continue to reside thereon, and that they alone were entitled to the same. But if the construction contended for by the plaintiffs was correct, then they insisted that a partition of the lands by metes and bounds could not be made without great injustice to all the parties, and that a sale of the said lands ought to be directed. The petition was takenpro confesso as to the parties who failed to answer, and was set for hearing upon bill and the answers of the other parties, and transmitted to the Supreme Court, where it was submitted without argument by
The petition for partition is based upon the construction which the plaintiffs put upon the will of Samuel Givens. They insist that the devises therein contained, except that to the widow, are void for uncertainty and for their tending to produce a perpetuity, and that consequently the lands descend to the children and certain of the grandchildren of the devisor as his heirs at law. The defendants deny the propriety of this construction and contend that the devisees are liable to neither of the objections urged by the plaintiffs; but, on the contrary, are intelligible and certain, giving to each of the devisees a conditional freehold in the lands so long as he or she shall continue to reside thereon. The question, then, is whether the clauses in the will which produce the difficulty are to be rejected as senseless and void, or are susceptible of an interpretation which can give to the objects of the devisor's bounty certain and definite estates? It must be admitted that (310) this question is not without difficulty, but after much reflection we have come to the conclusion that the devises are not void because of either of the reasons assigned by the plaintiffs, but are good and effectual, giving to the persons therein named an estate in fee-simple absolute as tenants in common. In coming to this conclusion we have endeavored to avail ourselves of the assistance of those settled rules of construction which the courts and the sages of the law have set up for the guidance of those whose duty it is to search for and find out, amidst their dark sentences and apparently inconsistent expressions, the intention of unlearned and sometimes unwise and capricious testators. In this case it is clear that the testator intended to dispose by his will of his whole estate. He commences it by saying: "As to my worldly estate, I dispose of the same as follows." He then proceeds to bequeath all his personal estate to and among his wife and children, in the manner *Page 214 
therein specified. His lands, consisting of several distinct tracts, but (as may be inferred from the pleadings) all lying adjacent to each other and used by him as one plantation, form the next and last subject of his disposition. Of them he gives to his wife, during her life or widowhood, the dwelling house and several fields by name, "together with the privilege of cutting timber on any part of his whole plantation for the purpose of keeping in repair the said premises to her allotted," declaring that at her death or marriage "the said land shall return unto the common stock." So far the will is explicit enough, but then comes the clauses set out in the pleadings, which create the doubt. The language of these clauses is manifestly very inartificial, and in the strange and uncommon conditions which he annexes to his devises, it is very difficult, if not impossible, to ascertain the devisor's intention as to who are to take, what they are to take, and what estates they are to have in his lands. No time is fixed upon in which his children, his daughters-in-law and his grandchildren are to elect "to settle and abide on his (311) lands" so as thereby to acquire an interest in them. No definite part of the land is given to each settler, so as not to interfere with the premises of the other residents. And it is not distinctly stated whether the settlers are to have life estates, upon the condition of residence, base or qualified fees or fees simple. Of one thing we feel confident: that the testator intended to dispose, not only of all his lands, but of his whole estate in them, as he had done, clearly enough, with regard to his personal property. It must be admitted that the words, "I will that my children William Givens, etc., do settle and abide on my land," are not appropriate terms for conveying a fee. Nor was the word "land" which was the term used in Cox v. Marks, 27 N.C. 361, but we think they may have that effect, when such is shown to be the intention of the devisor. This appears not only from the clause of his will first referred to, but from his showing that he knew how to limit a life estate by giving to his wife one in express terms and then providing that the land he had given her should at her death or marriage return to the common stock. In the subsequent gifts to his children no limit to their estates is fixed, and he speaks of them and their lawful representatives in connection with the estates which he gave them. We conclude, then, that he intended a fee for his devisees, but he intended also to annex certain conditions to such fee which are inconsistent with the nature of that estate and are therefore void. He intended to give an absolute estate, with a restriction upon the power of alienation, and to confer a tenancy in common, or quasi tenancy in common, with the like restriction upon the power of compelling partition. He intended to fix his children and their heirs forever upon a particular spot, without the power of removal for any cause or under any *Page 215 
circumstances. Such conditions and restrictions are inconsistent with free and full enjoyment of a power of disposition over a fee-simple and are therefore void.
Supposing, then, that the devisees are to take an unconditional (312) estate as tenants in common in fee, a question arises whether the surviving children of the testator's deceased son, Samuel, and the widow and children of his deceased sons, John and Allen, shall takeper stirpes or per capita. We are of opinion that they take per stirpes. Such was clearly expressed to be the case as to the children of the testator's deceased sons taking the shares of their respective fathers in the personal estate, and though not so fully declared, yet we think it may be fairly inferred that such was the testator's intention with regard to his lands. The children of each deceased son are mentioned as a class, and the widows are entitled, because they are expressly named in conjunction with their children.
Our opinion, then, is that the children of the testator, the widows of his deceased sons, John and Allen, with their children, and the children of his deceased son, Samuel, take under his will an unrestricted estate in fee-simple in his land, as tenants in common, subject to the life estate of the testator's widow in a part of such lands; that the children of Samuel, the son, and the widows and children of the sons of John and Allen take per stripes, that is, the shares which the sons would have taken had they been living, and that the petitioners, as tenants in common with the defendants, are entitled to have their lands divided either by an actual partition or by a sale for that purpose. As most of the parties object that an actual partition cannot be had without doing great injustice to all, and therefore insist upon a sale, and as we have no proof before us to show whether a sale or an actual partition would be most advantageous to all the parties, we must direct an enquiry upon that subject, and the cause will be retained for further directions upon the coming in of the report. It is hardly necessary to observe that as all the persons interested in the lands mentioned in the pleadings are made parties to the partition, and are now before the Court, a partition or sale may be had under the present proceeding, though (313) some of the parties, to-wit, the widows of the deceased sons, will be entitled to a part of the land or a portion of their proceeds if sold, contrary to the view taken by the petitioners.
PER CURIAM. Decree accordingly.
Cited: Twitty v. Camp, 62 N.C. 62; Latimer v. Waddell, 119 N.C. 377. *Page 216